IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRICO MARINE ASSETS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO 08-0710-KD-C |
| | ) | |
| BENDER SHIPBUILDING & REPAIR | ) | |
| CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the motion for leave to amend complaint to add

Thomas B. Bender, Jr., (Bender) as an additional defendant filed by Trico Marine Assets, Inc.

(Trico) (doc. 12), the response filed by Bender Shipbuilding and Repair Company, Inc. (Bender,

Inc.) (doc. 16), and Trico's reply (doc. 18).  Upon consideration and for the reasons set forth

herein, Trico's motion for leave to amend is **GRANTED** and Bender, Inc.'s, alternative motion

for a more definite statement is **DENIED**.  Trico shall file the second amended complaint on or

before **May 22, 2009.**

I. Background

Trico filed its complaint against Bender, Inc., alleging that during construction of two

vessels for Trico, Bender Inc., experienced financial problems and as part of their agreement for

completion of the vessels (evidenced by seventeen Letter Agreements), Trico agreed to pay

certain subcontractors direct.  Trico also alleges that Bender, Inc. has failed to repay Trico the

amount paid to the subcontractors, failed to provide collateral for the loan from the sale of

another business entity Tampa Bay Shipbuilding, Inc., and failed to execute a promissory note.

Trico brought two counts for breach of contract and one for specific performance against Bender, Inc.  Trico now seeks to amend its complaint to add three counts against Thomas J. Bender, Jr. for misrepresentation, joint and several liability, and piercing the corporate veil.

Bender, Inc. answered and set forth its affirmative defenses.  Bender, Inc. also filed a counterclaim against Trico alleging that the vessels were delivered but Trico has not paid all monies due to Bender, Inc.  Bender, Inc. objects to Trico's motion for leave to amend.

II. Discussion

The docket indicates that Trico has amended its complaint once as a matter of course before Bender, Inc. answered or otherwise plead to the complaint (doc. 4, first amended complaint; doc. 9, answer to the first amended complaint ).  See Fed. R. Civ. P. Rule 15(a)(1) (A party may amend its pleading once as matter of course before being served with a responsive pleading).  Since, Bender, Inc. has answered, Trico's motion for leave to amend is governed by Rule 15(a)(2) which addresses amendments after service of a responsive pleading, as follows:

> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P Rule 15(a)(2).

Bender Inc. does not consent.  Thus, the court must consider whether justice requires that leave to amend be given. See Laurie v. Alabama Ct. of Crim.App., 256 F.3d 1266, 1274 (11th Cir.2001).  In general, the federal rules favor allowing amendments. Dussouy v. Gulf Coast Investment Co., 660 F.2d 594, 597 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."); Fed.R.Civ.P. Rule 15(a)(2) (the "court should freely give leave when justice so requires.").  In the absence of a substantial

2

reason to deny the motion, such as undue prejudice, undue delay, bad faith or dilatory motive on the part of the plaintiff, repeated failure to cure deficiencies or futility, the interests of justice require that leave should be freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); Florida Evergreen Foliage v. E. I. DuPont De Nemours and Co., 470 F. 3d 1036, 1041 (11th Cir. 2006) (finding that the district court's discretion did not extend to denying a motion for leave to amend unless a substantial reason exists);  Hargett v. Valley Fed. Savings Bank, 60 F. 3d 754, 761 (11th Cir. 1995); Espey v. Wainwright, 734 F. 2d 748, 750 (11th Cir. 1984).

Trico argues generally that this case is in the early stage of litigation and thus neither party will be prejudiced by the amendment and that judicial economy and efficiency will be served by consolidating multiple actions which arise from the same set of facts.  In response, Bender, Inc., argues that the proposed second amended complaint fails to state a claim upon which relief might be granted as to the new claims against Thomas B. Bender, Jr. (Bender) individually, and therefore, the proposed amendments are futile.

Since the Rule 16(b) Scheduling Order was entered only after Trico's request to amend the complaint, there does not appear to be any undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies on the part of Trico.  The deadline for amendment of pleadings is scheduled for May 15, 2009 and discovery ends November 2, 2009.  Thus, the court will address whether the motion for leave to amend is futile.  An amendment is futile when the proposed amended complaint would be subject to dismissal because the plaintiff fails to state a valid claim for relief. Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 n.10 (11th Cir. 2000).

A. Trico's misrepresentation claim against Bender.

In the proposed Count IV, Trico claims that Bender personally misrepresented to Trico that Bender, Inc., would provide collateral and execute a promissory note to secure the loans or

adequately capitalize repayment to Trico, that Bender never intended to cause Bender, Inc. to

perform as represented, and that Trico relied upon this misrepresentation to its detriment.

Bender, Inc. argues that Trico's claim for misrepresentation, plead as a claim for promissory

fraud, fails as a matter of law because Trico could not reasonably have relied on Bender's

alleged promise of future action.  Specifically, Bender, Inc. argues that because the alleged

misrepresentations by Bender were made after the parties began to enter into the Letter

Agreements, Trico could not have relied upon Bender's statements to decide to make the

payments, enter into the Letter Agreements, or forego any attempt to secure a financial interest

in Tampa Bay Shipbuilding, and thus Bender's alleged misrepresentations did not induce Trico

to act in a manner it would not have otherwise.  Bender, Inc. also argues that the claim as plead

fails as a matter of law because it is without factual basis and because Trico failed to describe

fraudulent circumstances as required by Rule 9(b), including specific factual allegations to

support Bender's intent not to perform or intent to deceive.

Trico responds that this claim is not futile because it sufficiently pleads all the elements

of a claim for promissory fraud and also satisfies the particularity requirements of Fed. R. Civ. P.

Rule 9(b) including dates and substance of misrepresentations made by Bender.  Trico states that

although it entered into Letter Agreements before Bender's alleged misrepresentations in the

conversation on September 23, 2008, it entered into five Letter Agreements after the

representations were made.  Trico also argues that it relied on Bender's misrepresentations and

paid additional sums under the Letter Agreements to subcontractors.

Under Alabama law, a claim for promissory fraud is based on a promise to act or not act

in the future. Ex Parte Michelin, 795 So. 2d 674, 678 (Ala. 2001).  In S.B. v. Saint James School,

959 So. 2d 72, 101, (Ala. 2006), the Alabama Supreme Court explained that claims of

promissory fraud require proof of the elements of fraud, specifically "(1) a false representation

(2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage

as a proximate consequence of the misrepresentation" and that "two additional elements must be

satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not

to perform the act promised, and (6) proof that the defendant had an intent to deceive." 959

So.2d at  101 (citations omitted).  Also, "[w]hile the mere failure to perform the promised act is

not by itself sufficient evidence of fraudulent intent, for purposes of a promissory-fraud claim,

the factfinder may consider that failure, together with other circumstances, in determining

whether, at the time the promise was made, the promisor intended to deceive."  Id. quoting Byrd

v. Lamar, 846 So.2d 334, 343 (Ala.2002) (internal quotations and citation omitted).

> Review of the proposed amended complaint shows Trico alleges as follows:
>
> In the Fall of 2008, Bender Shipbuilding began experiencing cash-flow problems
> during the construction of the Vessels, causing Mr. Bender to approach Trico
> concerning these cash-flow problems, further delays in the completion of the
> Vessels and non-payment to subcontractors.  As a result, on or about September
> 10, 2008, Trico and Bender Shipbuilding began entering into and executing Letter
> Agreements
> . . .
>
> Beginning in September of 2008, Trico became concerned about the financial
> stability of Bender Shipyard and Mr. Bender.  On or about September 23, 2008,
> Trico representatives contacted Mr. Bender to discuss Bender Shipyard and the
> Letter Agreements.

(doc. 12-2,¶ 11, 14).

Paragraph 11, states that Bender approached Trico and "[a]s a result, on or about

September 10, 2008, Trico and Bender Shipbuilding began entering into and executing Letter

Agreements".  Thus, Trico has plead that Bender contacted Trico before the parties began to

execute the Letter Agreements.  In Paragraph 11, Trico alleges that a conversation occurred with

Bender on or about September 23, 2008, after the parties began to execute the Letter

Agreements. Moreover, Paragraphs 15 through 19 of the proposed complaint allege that Bender advised Trico of the potential sale of Tampa Bay Shipbuilding, gave Trico contact information by which Trico could obtain details of the sale, and then alleges that the "intent of these discussion by Mr. Bender was to provide Trico with personal assurances regarding the Loan and any amounts due under the Vessel Construction Contracts." (doc. 12-2, ¶¶ 15-19).

While Bender's representations on September 23, 2008 and thereafter, could not have induced Trico to enter into earlier Letter Agreements, his representations may have induced Trico to enter into the remaining Letter Agreements and forego any attempt to protect itself financially during the sale of Tampa Bay Shipbuilding.  Further it is a factual determination whether Trico reasonably relied to its detriment upon the representations of Bender.  Hence, Trico's claim of promissory fraud has been sufficiently plead and would not be futile.[1]

Bender Inc. also argues that Trico did not sufficiently plead fraud under Rule 9(b) and thus allowing the amendment would be futile.  The proposed amended complaint must sufficiently give Bender, Inc. fair notice of the claim and sufficient factual allegations upon which the claim is based. See Fed.R.Civ.P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief"); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir.2006) ("However, a complaint

---

[1] Trico pleads that Bender approached Trico when Bender, Inc. began to experience cash-flow problems and thus began the process of executing the Letter Agreements which contain the provision for the loan and promissory notes.  Trico also plead that when it later became concerned about the financial stability of Bender, Inc., Bender then made representations and personal assurances, including those through his investment banker, to Trico and to the American Bureau of Shipping, that the proceeds of the sale of Tampa Bay would be used to capitalize Bender, Inc. and repay the loan to Trico, but instead he failed to do so and "removed a significant amount of its assets from the reach of its creditors, including Trico." As explained in Byrd, "the factfinder may consider [failure to perform], together with other circumstances, in determining whether, at the time the promise was made, the promisor intended to deceive." Byrd at 343.

must still contain either direct or inferential allegations respecting all material elements of a

cause of action.... Thus, at a minimum, notice pleading requires that a complaint contain

inferential allegations from which we can identify each of the material elements necessary to

sustain a recovery under some viable legal theory.") (citation omitted).  In <u>Ziemba v. Cascade</u>

<u>Int'l, Inc.</u>, 256 F. 3d 1194 (11th Cir. 2001), the Eleventh Circuit explained as follows:

> The application of Rule 9(b), however, "must not abrogate the concept of notice
> pleading."[ ]  Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what
> statements were made in what documents or oral representations or what
> omissions were made, and (2) the time and place of each such statement and the
> person responsible for making (or, in the case of omissions, not making) same,
> and (3) the content of such statements and the manner in which they misled the
> plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

256 F.3d at 1202 (citations omitted).

Review of the proposed amended complaint shows that Trico has alleged the dates of

certain conversations and the content, as well as an allegation that Bender did not intend to

perform as represented (doc. 12-2, ¶ 11, 14-22, 26-27, 41-42).  Thus the proposed second

amended complaint sufficiently sets forth the allegedly fraudulent actions of Bender to preclude

this court from finding this amendment would be futile.  Discovery may "disclose more precisely

the basis of both claim and defense" and "define more narrowly the disputed facts and issues."

<u>Conley v. Gibson</u>, 355 U.S. 41, 48, 78 S.Ct. 99 (1957).  Moreover, the federal rules favor

allowing a determination on the merits. <u>Dussouy</u>, 660 F. 2d at 596.

B.  <u>Joint and several liability of Bender - Statute of Frauds</u>

In the proposed Count V, Trico alleges that Bender's promises give rise to an implied

contract of suretyship by which Bender is jointly and severally liable for the obligations of

Bender, Inc.  Trico alleges that Bender breached that obligation by refusing to provide collateral

for the debt, execute a promissory note, or repay Trico.

Bender, Inc. argues that any claim based on an alleged promise by Bender as president of Bender, Inc. to make Trico whole is void because the promise was not in writing and lacked consideration and thus violated the Statute of Frauds. Bender, Inc. also argues that any claim that Bender's alleged promises resulted in an implied suretyship fails because suretyship obligations arise only by express contract, fall within the Statute of Frauds, and therefore, must be in writing with consideration expressed.

Trico responds that because Bender's oral promises were memorialized in subsequent email correspondence including that of Bender's investment banker, his suretyship agreement is sufficient to comply with the Statute of Frauds. Trico also argues two exceptions to the Statute. First, Trico argues that because Bender's promise was fraudulent, he cannot plead the invalidity of the promise under the Statute of Frauds. Second, Trico argues that Bender's promises to pay the debt of a third party, i.e., Bender Inc., as evidenced by the Letter Agreements, constitute "original" agreements outside the context of the Statute of Frauds.

The Statute of Frauds sets forth, in relevant part, that "[i]n the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing: . . . Every special promise to answer for the debt, default or miscarriage of another;" Code of Alabama § 8-9-2(3).

Although email correspondence is not subscribed by the party in the traditional sense, Trico has provided a series of e-mails as evidence of a written agreement which may satisfy the Statute of Frauds. Thus, the claim cannot be determined to be futile at this point.

Additionally, if Bender's "object" of his promise was to promote his "purpose" of not paying Trico, then Trico may have sufficiently stated a claim against Bender in that the

agreement between Bender and Trico may be an "original" agreement. See Waide v. Bingham,

583 So.2d 263, 264-265 (Ala. 1991) ("'Collateral" agreements are those in which the object of

the promise is to become the guarantor of another's debt; these are within the statute and must be

in writing to be enforceable.' ... '"Original" agreements are those in which the effect of the

promise is to pay the debt of another, but the object of the promise is to promote some purpose

of the promisor.') (quoting Christian Television Corp. v. RCH Broadcasting, Inc., 554 So.2d 989

(Ala.1989)).[2]  Because the application of the Statute of Frauds turns on questions of fact, the

interests of justice require that Trico be allowed leave to amend to test its claim on the merits.

        C.        Piercing the corporate veil

        In the proposed Count VI, Trico claims that the "corporate veil" of Bender, Inc. should

be pierced and Bender held personally liable for the debt owed to Trico by Bender, Inc.  Trico

alleges that Bender, Inc. and Tampa Bay are closely-held companies run by Bender which act as

one, and that Bender directed and controlled the affairs of both for his personal financial benefit

to the detriment of the creditors.  Trico also alleges that Bender "is an individual domiciled in

Mobile County, Alabama, and has personally assumed liability for the actions taken by the

Defendants as alleged herein, or in the alternative is personally liable for the damages alleged

herein." (Doc 12-2, ¶ 3).  Trico does not allege that Bender is an officer or shareholder of

Bender, Inc.  However, in Trico's motion for leave to amend, Bender is identified as the

---

     [2] The exception to the Statute of Frauds advanced by Trico whereby the Statute would
not operate to void an oral agreement if there was fraud in the inception appears to have been
overruled in Bruce v. Cole, 854 So. 2d 47 (Ala. 2003).  The Court in Bruce overruled a line of
precedent and held that "an oral promise that is void by operation of the Statute of Frauds will
not support an action against the promisor for promissory fraud." Id at 58.  Bruce has been
interpreted to stand for the "proposition that a party may not avoid the effect of the Statute of
Frauds by framing the claim as one alleging promissory fraud or by invoking the historical fraud-
in-the-inception exception to the Statute of Frauds." DeFriece v. McCorquodale, 998 So. 2d 465
(Ala. 2008).

President of Bender, Inc.

Bender, Inc. argues that Trico's proposed complaint raises claims only under the theory

that the corporate veil may be pierced where the corporation is operated as an instrumentality or

alter ego of an individual.[3]  Bender, Inc. argues that Trico's allegations regarding Bender, Inc.

and Tampa Bay being treated generally as one legal entity by Bender, even if true, would fail to

support a claim for piercing the corporate veil to hold Bender personally liable and that Trico has

not plead any facts to support the existence of any claim that Bender dominated the corporations.

Trico responds that it has sufficiently plead facts to establish that Bender exerted

dominance over his instrumentality Bender, Inc.  Trico argues that its allegations of dominance,

Bender's promissory fraud, and misuse of control of Bender, Inc., (i.e., Bender rearranged assets

between Bender, Inc. and Tampa Bay prior to the sale of Tampa Bay and thus evaded his

creditors and damaged Trico), is sufficient to state a viable claim that Bender is the alter ego of

Bender, Inc. under the liberal standards of Rule 15(a)(2).

The Alabama courts have explained the legal theory of piercing the corporate veil as

follows:

> "A corporation is a legal entity that exists separate from its
> shareholders, and its actions and obligations are to be considered
> separately from those of its shareholders. Wright v. Alan Mills,
> Inc., 567 So.2d 1318 (Ala.1990). The corporate structure is
> intended to protect shareholders and officers from liability arising
> from the operation of the corporation. Messick v. Moring, 514
> So.2d 892, 894 (Ala.1987). The ability to pierce a corporate veil
> and impose personal liability on the corporation's shareholders
> arises from an equitable doctrine and ' "furnishes a means for a
> complainant to reach ... [an] individual upon a cause of action that
> otherwise would have existed only against the ... corporation." 1
> William Meade Fletcher, Fletcher Cyclopedia of the Law of

---

[3] Alabama law also recognizes the theory where the corporation is inadequately
capitalized or where the corporation is conceived or operated for a fraudulent purpose.

> Private Corporations § 41.10 (perm. ed. rev.vol.1999).' <u>Ex parte</u>
> <u>Thorn</u>, 788 So.2d 140, 145 (Ala.2000). Piercing the corporate veil
> to impose personal liability on a corporation's shareholder is not a
> power that is exercised lightly. <u>First Health, Inc. v. Blanton</u>, 585
> So.2d 1331, 1334 (Ala.1991)."

<u>Gilbert v. James Russell Motors, Inc.</u>, 812 So.2d 1269, 1273 (Ala.Civ.App.2001).
The fact that a party owns all or a majority of the stock in a corporation does not
alone destroy the corporate entity, nor does the fact that the corporation is not
sufficiently capitalized alone work to defeat the corporate existence. <u>Ramko, Inc.</u>
<u>v. Lander</u>, 707 So.2d 645 (Ala.Civ.App.1997). " 'To pierce the corporate veil, a
[party seeking to pierce the corporate veil] must show fraud in asserting the
corporate existence or must show that recognition of the corporate existence will
result in injustice or inequitable consequences.' " <u>Econ Mktg., Inc. v. Leisure Am.</u>
<u>Resorts, Inc.</u>, 664 So.2d 869, 870 (Ala.1994) (quoting <u>Backus v. Watson</u>, 619
So.2d 1342, 1345 (Ala.1993), citing <u>Washburn v. Rabun</u>, 487 So.2d 1361
(Ala.1986), and <u>Cohen v. Williams</u>, 294 Ala. 417, 318 So.2d 279 (1975)). Also,
where a corporation is "controlled by persons who use the corporation as a mere
instrumentality, a court is not required to recognize the corporation as a separate
entity." <u>Thorne v. C & S Sales Group</u>, 577 So.2d 1264, 1266 (Ala.1991).

<u>Shelton v. Clements,</u> 834 So.2d 775, 781-782 (Ala.Civ.App. 2002).

At this stage, Trico has made sufficient factual allegations in Paragraphs 11 through 30 to

provide notice of the claim to Bender and Bender, Inc.  While discovery may not bear out

sufficient evidence to support a claim on the merits for piercing the corporate veil at the

dispositive motion stage or at trial, Trico has stated a valid claim for relief and thus, the

amendment is not futile.

       D.      <u>Alternative motion for a more definite statement</u>

Bender, Inc. also raises an alternative motion for more definite statement.  The court has

reviewed the proposed amended complaint and finds that the complaint is not too vague or

ambiguous that Bender, Inc. or Bender could not reasonably prepare a response.  The alleged

actions on the part of Bender are sufficiently identified for Bender, Inc. and Bender to form an

answer or prepare an appropriate responsive pleading to the new claims and the factual

background alleged is essentially the same for all claims.  Moreover, it is clear from the

argument raised in opposition to this motion for leave to amend the complaint, that Bender, Inc.

and Bender could readily file a responsive pleading, i.e, motion to dismiss for failure to state a

claim upon which relief can be granted.  Importantly, "[p]leadings provide notice, whereas

discovery procedures provide the intricacies of the issues and evidence for trial." Mazzoni v.

Halpern, 2009 WL 813213, 2  (M.D.Fla. March 26, 2009).

     III.  Conclusion

     Accordingly, because Trico "ought to be afforded an opportunity to test [its] claim on the

merits" Foman, 371 U.S. at 182, and because "leave shall be freely given when justice so

requires[]" Bryant, 252 F. 3d at 1163, Trico's motion for leave to amend complaint (doc. 46) is

**GRANTED** as set forth herein and Bender, Inc.'s, alternative motion for a more definite

statement is **DENIED**.

     **DONE** and **ORDERED** this 14h day of May, 2009.


               **s / Kristi K. DuBose**
               **KRISTI K. DuBOSE**
               **UNITED STATES DISTRICT JUDGE**