**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TRICO MARINE ASSETS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO 08-0710-KD-N** |
| | ) | |
| **BENDER SHIPBUILDING & REPAIR** | ) | |
| **CO., INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the court on the motion for partial summary judgment filed by Trico

Marine Assets, Inc. (Trico) (doc. 20-1), the memorandum in support of motion for partial

summary judgement and all exhibits thereto filed by Trico (doc. 20-2 and 20-3), the motion to

dismiss for improper venue filed by Defendant Bender Shipbuilding and Repair Co., Inc.

(Bender, Inc.) (doc. 24), the motion to dismiss and compel arbitration filed by Bender, Inc. (doc.

25), the memorandum of law in support of its motion to dismiss and all exhibits thereto filed by

Bender, Inc. (doc. 26), and the reply to the motions filed by Trico (doc. 29).  Upon consideration

and for the reasons set forth herein, Bender, Inc.'s motion to dismiss for improper venue is

**DENIED,** Bender, Inc.'s motion to dismiss and compel arbitration of all claims relating to the

Converteam letter agreement is **GRANTED,** and Trico's motion for partial summary judgment

is **GRANTED**, in part, and **DENIED,** in part.

I. Background

On or about September 1, 2006, Trico entered into two contracts with  Bender, Inc. for

the construction and sale of  two vessels.  (Trico's Complaint (doc. 1)).  Bender, Inc. contracted

with various subcontractors to assist in the construction of the vessels.  According to the complaint filed on December 9, 2008, and the amendments thereto,[1] in the fall of 2008, because Bender Inc. was experiencing cash flow problems, Trico, Bender, Inc., and various subcontractors entered into seventeen separate letter agreements whereby Trico agreed to pay the subcontractors directly for amounts owed to them by Bender, Inc. for their work on the two vessels.  Trico alleges that Bender, Inc. agreed, pursuant to the letter agreements, to execute a promissory note in Trico's  favor for any amounts Trico paid to the subcontractors in excess of the amount it owed  Bender, Inc. under the two vessel construction contracts.[2]  Trico also alleges that Bender, Inc. agreed to provide sufficient collateral for the loan.  Trico alleges that Bender, Inc. breached the letter agreements by failing to execute the required promissory note and by failing to provide collateral for the loan.  The complaint also alleges that Bender, Inc. breached the original construction contracts by failing to make payment for alleged construction delays.  Trico has also asserted claims against Thomas J. Bender, Jr., President of Bender, Inc., in his individual capacity.

Bender, Inc. filed its answer setting forth several affirmative defenses, including a defense of improper venue and a defense that some or all of the matters in dispute are subject to mandatory arbitration.[3]  Bender, Inc. alleges that fifteen of the seventeen letter agreements

---

[1] Trico's Complaint (doc. 1), First Amended Complaint (doc. 4), and Verified Second Amended Complaint (doc. 31) will be referred to hereinafter as "the complaint."

[2] Although Trico alleges in its complaint and in the brief it submitted in support of its motion for summary judgement that all of the letter agreements required execution of a promissory note and sufficient collateral, a review by the Court of the letter agreements reveals that this is not the case.  A full discussion of the relevant terms of the seventeen letter agreements is contained herein.

[3] Bender, Inc. has also asserted a counterclaim against Trico alleging that Trico has not paid Bender, Inc. the amount due for construction of the vessels.  This counterclaim is not

contain a provision stating that "[v]enue for any dispute shall lie in Harris County, Texas."
Bender, Inc. further alleges that one of the letter agreements, the Converteam Letter Agreement,
contains a provision stating that "[v]enue for any dispute shall lie in New York, New York."
The Converteam Letter Agreement also states that "[a]ny dispute shall be settled by arbitration...
."  Based upon these provisions, Bender, Inc. seeks dismissal of Trico's claims for breach of
these letter agreements.

Bender, Inc. also opposes Trico's motion for partial summary judgment.  Bender, Inc.
alleges that one of the letter agreements is not enforceable because it has not been signed.  As to
the other agreements, Bender, Inc. argues that Trico has not presented sufficient evidence to
warrant summary judgment.

II. <u>Discussion</u>

A.  <u>Forum Selection Clauses</u>

In its complaint, Trico alleges that Bender, Inc. has breached seventeen separate letter
agreements.  Each of the letter agreements was executed between Trico, Bender, Inc., and
seventeen different subcontractors.  Fifteen of the letter agreements state that "[v]enue for any
dispute shall lie in Harris County, Texas," one of the letter agreements (the "Converteam Letter
Agreement") provides that "[v]enue for any dispute shall lie in New York, New York," and one
of the letter agreements (the "Coastal Marine Equipment Letter Agreement") does not contain a
forum selection clause.  Bender, Inc. argues that Trico's claims based upon these letter
agreements are due to be dismissed, pursuant to Rule 12(b)(3) of the Federal Rules of Civil

involved in the motions currently before the Court.

Procedure, for improper venue.[4]

In response, Trico argues that the claims are not due to be dismissed because the forum selection clauses are permissive, not mandatory, and that, in any event, Bender waived its right to object to venue.

Courts generally classify forum selection clauses as either permissive or mandatory.  "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere.  A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" Global Satellite Communication Co. v. Starmill U.K Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004).  A forum selection clause that uses the word "shall" is "most reasonably interpreted to mandate venue in an exclusive forum."  Id. (finding that a provision that read "venue shall be in Broward County" was mandatory); accord City of West Palm Beach v. Visionair, Inc., 199 Fed. Appx. 768, 769-70 (11th Cir. 2006).  Pursuant to these authorities, it is clear that the forum selection clauses at issue here are mandatory and must be enforced absent other grounds for nonenforcement.

Trico alleges that, even if mandatory, the forum selection clauses should not be enforced because Bender, Inc. has waived its right to object to venue.  The Eleventh Circuit has held that defects of venue may be waived by a party.  See Manley v. Engram, 755 F.2d 1463, 1468 (11th Cir. 1985).  In Manley, the court held that the right to object to improper venue may be waived "by express waiver, by conduct amounting to waiver as a matter of law, or by failure to interpose a timely and sufficient objection."  Id.

---

[4] Bender has correctly asserted its motion for dismissal based upon the forum selection clause pursuant to Rule 12(b)(3).  See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998).

There is no allegation that Bender, Inc. has expressly waived its right to object to venue. It also appears that Bender has interposed a timely objection.  Rule 12 of the Federal Rules of Civil Procedure requires the defense of improper venue to be asserted in the responsive pleading or a motion filed prior to the responsive pleading.  Fed. R. Civ. P. 12(b).  As to waiver of the defense, Federal Rule of Civil Procedure 12(h) states:

> (1) ***When Some Are Waived.***  A party waives any defenses listed in Rule 12(b)(2)-(5) by:
>
> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
>
> (B) failing to either:
>
>> (i) make it by motion under this rule; or
>>
>> (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Trico acknowledges that Bender, Inc. asserted improper venue as an affirmative defense in its initial answer, thus it appears that Bender, Inc. met the requirements of Rule 12.

The dispositive question then is whether Bender, Inc. has engaged in conduct amounting to waiver as a matter of law.  In <u>Goldberg v. Wharf Constructers</u>, 209 F. Supp. 499, 501-02 (N.D. Ala. 1962), the court noted that a party can waive its right to object to venue by "utilization  of court facilities in a manner which is inconsistent with an objection to the venue, as the filing of a counterclaim in <u>Rubens v. Ellis</u>, 202 F.2d 415 (5th Cir. 1953)."  In the instant case, Trico argues that because Bender, Inc. filed a counterclaim, it waived its right to object to venue.  Trico also argues that because discovery has commenced, Bender, Inc. is not entitled to dismissal.  Thus, the issue for determination is whether, even though Bender, Inc. complied with Rule 12, it has still waived its right to object by filing a counterclaim and otherwise acting in a manner inconsistent with an objection to venue.

As noted above, Trico filed its original complaint on December 9, 2008, and Bender, Inc. answered on January 30, 2009, setting forth a general affirmative defense of improper venue, but not specifically mentioning any forum selection clause.  In its answer, Bender, Inc. set forth a counterclaim for breach of the original construction contract.  On March 19, 2009, the parties filed a Report of their Rule 26 meeting.  See Report of Parties' Planning Meeting (doc. 17). Although Bender, Inc. mentions the existence of the forum selection clauses in its statement of facts and claims, it does not mention an objection to venue or any intent to pursue enforcement of those clauses.  In fact, Bender, Inc.'s attorney drafted the document which sets forth a discovery plan and states that the case will be ready for trial in February, 2010.  On April 9, 2009, Trico filed its motion for partial summary judgment asking this Court to find, as a matter of law, that Bender, Inc. has breached the letter agreements.  Bender, Inc. did not seek enforcement of the forum selection clauses in the letter agreements until April 20, 2009, when it filed its motion to dismiss for improper venue in response to Trico's motion for partial summary judgment.

Based upon these facts, the Court finds that Bender, Inc. has waived its objection to venue.  Specifically, Bender's three month delay in asserting the issue of  improper venue by appropriate motion, during which time Bender participated in planning discovery and trial in this venue, are acts inconsistent with an objection to venue.  Accordingly, its motion to dismiss for improper venue is **DENIED**.

B. Arbitration

Bender, Inc. has requested that this Court enter an order compelling arbitration of Trico's claim for breach of the Converteam Letter Agreement.  The Converteam Letter Agreement states

6

that "[a]ny dispute shall be settled by arbitration in accordance with the rules of the American Arbitration Association."  Trico does not dispute the validity of this contract, nor does Trico challenge the applicability of the arbitration provision to the claims it has asserted against Bender, Inc.  Trico's opposition to the motion is based solely on its contention that Bender, Inc. has waived its right to compel arbitration.

It is well established that valid arbitration clauses must be enforced absent waiver by the party seeking enforcement.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985), Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20-25 (1983).  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Byrd, 470 U.S. at 218.  This is true even if arbitration of a claim will result in bifurcated proceedings or piecemeal litigation.  Dean Witter Reynolds, Inc., 470 U.S. at 218-20,  Moses H. Cone Mem'l Hosp., 460 U.S. at 20.

However, "despite the strong policy in favor of arbitration, ... a party may, by its conduct, waive its right to arbitration."  S&H Contractors, Inc. v. A.J. Taft Coal Co., Inc., 906 F.2d 1507, 1514 (11th Cir. 1990) (citation omitted).  A party may waive its right to arbitration if the party acts inconsistently with the arbitration right by "'substantially invok[ing] the litigation machinery' prior to demanding arbitration" and, "in so acting, has in some way prejudiced the other party."  Id. (quoting E.C. Ernst, Inc. v. Manhattan Constr. Co., 559 F.2d 268, 269 (5th Cir. 1977)).  The determination of whether a party has invoked the litigation machinery to such an extent as to constitute waiver of the right to arbitrate is dependent upon the facts of each case.  See Burton-Dixie Corp. v. Timothy McCarthy Constr. Co., Inc., 436 F.2d 405, 408 (5th Cir.

7

1971).  To determine whether the other party has been prejudiced, the court "may consider the length of the delay in demanding arbitration and the expense incurred by that party from participating in the litigation process."  <u>S&H Contractors</u>, 906 F. 2d at 1514.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an *allegation of waiver*... ."  <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25 (emphasis added).

In the instant case, Bender, Inc. was served with Trico's complaint on December 10, 2008 and its first amended complaint on December 23, 2008.  Bender filed its answer and counterclaim on January 30, 2009.  In the first sentence of its answer,  Bender stated that it was filing its answer "without waiver of the mandatory arbitration provisions in certain of the parties' agreements... ."  (doc. 9).  Bender also included as an affirmative defense that "some or all of the matters in dispute are subject to mandatory arbitration pursuant to the terms of the parties' agreement(s)."  The parties conducted a Rule 26(f) planning meeting in March of 2009, filed a Rule 26(f) Report on March 19, 2009, and made Rule 26(a) Initial Disclosures.  On April 9, 2009, Trico filed a motion for partial summary judgment.  Bender filed its motion to compel arbitration on April 20, 2009.

In light of the law and facts set forth above, the issue here is whether the actions of Bender, Inc. in this case amounted to a substantial invocation of the litigation machinery and, if so, whether Bender Inc.'s actions in this regard have in some way prejudiced Trico.  In support of its contention that Bender, Inc. has waived its right to demand arbitration, Trico relies primarily upon <u>S&H Contractors</u>, 906 F.2d 1507, and  <u>Miller Brewing Co. v. Fort Worth Distrib. Co.</u>, 781 F.2d 494 (5th Cir. 1986).  These cases, however, are easily distinguishable from the case

8

at hand.  In both <u>S&H Contractors</u>, 906 F.2d at 1514 and <u>Miller Brewing</u>, 781 F.2d at 497, the court found waiver when the party who had initially filed the suit waited eight months after filing the complaint to demand arbitration.  In <u>S&H Contractors</u>, the plaintiff (who was seeking to compel arbitration) had taken depositions of five of the defendant's employees prior to demanding arbitration.  In the instant case, the defendant, Bender, Inc., inexplicably delayed seeking arbitration for three months.  However, Bender, Inc. had taken no depositions at the time of the motion to compel, and Trico does not appear to be otherwise prejudiced by the request.[5]

Being mindful of the strong policy favoring arbitration and the Supreme Court's instruction that, when considering an allegation of waiver, any doubts should be resolved in favor of arbitration, this Court finds that Bender, Inc.'s actions in this case did not rise to the level necessary to support waiver.  Bender firmly stated in its answer that it was answering the complaint "without waiver of the mandatory arbitration provisions" in the Converteam Letter Agreement.  In <u>General Guaranty Inc. Co. v. New Orleans General Agency, Inc.</u>, 427 F.2d 924, 929 n.5 (5th Cir. 1970), the court noted that "[o]nce the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver."  (Citing <u>Hilti, Inc. v. Oldach</u>, 392 F.2d 368 (1st Cir. 1968)).  In light of the fact that Bender, Inc. gave notice in its answer that it did not intend to waive its right to arbitrate, Trico has not met its heavy burden of proving waiver.

---

[5]  Although Trico attempted to argue that it has in some way been prejudiced by Bender, Inc.'s delay in seeking arbitration, this Court does not find that argument persuasive.  The arbitration agreement is contained in only one of seventeen letter agreements.  Claims relating to the other sixteen agreements, as well as claims relating to the original construction contracts and claims against Thomas J. Bender, Jr., individually, still remain pending in this court.  No actions have been taken by either party that would apply only to the Converteam Letter Agreement, thus Trico could not have incurred any additional expense or taken any additional actions.

Accordingly, Bender, Inc.'s motion to compel arbitration of all claims relating to the Converteam Letter Agreement is hereby **GRANTED**. All claims relating to the Converteam Letter Agreement set forth in Trico's complaint and all amendments thereto are hereby severed from the remaining claims and **DISMISSED.**

      C. <u>Anixter Letter Agreement</u>

Trico seeks a partial summary judgment as to its claims relating to the seventeen letter agreements allegedly entered into by the parties. One of the seventeen letter agreements upon which Trico's claims are based, the Anixter Letter Agreement, was not executed by any of the three parties to the agreement. Bender, Inc. does not allege any factual dispute with the terms of the contract as set forth by the unexecuted agreement and recounted in the affidavit of Ray Hoover. Rather, without any case support or analysis, Bender, Inc. asserts that the Anixter Letter Agreement cannot be enforced because it has not been signed by the party to be charged and is, therefore, in violation of §§ 8-9-2(3) and 8-9-2(7) of the Alabama Code.[6]

  Sections 8-9-2(3) and 8-9-2(7) provide:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:

---

[6] Neither Bender, Inc. nor Trico has questioned which state's statute of frauds applies to this case. Bender, Inc. has cited the Court to both the Alabama and Texas statutes (doc. 26, p.4), while Trico has only analyzed the issue under Alabama law (doc. 29, pp. 3-5). This Court finds that an analysis of this issue pursuant to the Alabama statute of frauds is appropriate. <u>See Klaxon Co. v. Stentor Electric Mfg. Co</u>, 313 U.S. 487, 496 (1941)(holding that a federal court sitting in diversity must apply the choice of law rules of the forum state); <u>Ex parte Promcom Services, Inc.</u>, 884 So.2d 827 (Ala. 2003)(deciding validity of contract clause under Alabama law despite a choice of law clause in the contract stating that TX law governed disputes between the parties).

...

(3) Every special promise to answer for the debt, default or miscarriage of
another;
...

(7) Every agreement or commitment to lend money, delay or forebear repayment
thereof or to modify the provisions of such an agreement or commitment except
for consumer loans with a principal amount financed less than $25,000.

Ala. Code § 8-9-2 (1975).

The Anixter agreement provides in relevant part as follows:

WHEREAS, Anixter and Bender are party to certain contracts or purchase orders
(the "Services Contract") pursuant to which Anixter has rendered various services
or materials for the construction of a 210-Foot Diesel Electric Powered Platform
Supply Vessel known as Hull No. 8066 ("Hull 8066"), which is being built by
Bender for Trico; and

WHEREAS, Bender owes Anixter money for services already rendered pursuant
to the Services Contract; and

WHEREAS, additional services are required of Anixter in order to complete the
construction of Hull 8066; and

WHEREAS, in consideration of Anixter rendering the services required of it in
order to complete the construction of Hull 8066, Trico shall assume the liability
for certain outstanding amounts owed to Anixter by Bender for services rendered
for the construction of Hull 8066 pursuant to the Services Contract;

NOW, THEREFORE, in consideration of the mutual covenants and agreements
set forth herein and for other good and valuable consideration, the receipt and
sufficiency of which are acknowledged, the parties hereto, intending to be legally
bound, agree as follows:

1.  Trico Payment.  Within 24 hours of the execution of this Agreement, Trico
agrees to pay to Anixter $40,551.17 in full satisfaction of all money Anixter is
owed for all services rendered by it under the Services Contract, both prior to and
after the date hereof, pursuant to the Services Contract with respect to the
construction of Hull 8066 (the "Full Payment")....

2.  Application of Trico Payment.  The Full Payment will be applied to the
balance owed by Trico to Bender for Hull 8066.  Following application of the Full

11

Payment, the balance owed to Bender by Trico for Hull 8066 is $1,295,630.73.

3. <u>Completion of Services by Anixter</u>.  Anixter will render all services required of it in order to timely complete Hull 8066 in accordance with the standards and conditions set forth in the Services Contract.

*        *        *

<u>See</u> Anixter Letter Agreement (doc. 20-3, p. 53).

With regard to the applicability of  § 8-9-2(3), it is well-settled under Alabama law that "[t]he promise of one person to pay the debt of another, made upon a new and valuable consideration, beneficial to the promisor, is not within the statute of frauds."  <u>Thornton v. Williams</u>, 71 Ala. 555 (Ala. 1882); <u>accord</u> <u>Borden v. King Mill & Lumber Co.</u>, 107 So. 455, 457 (Ala. 1926); <u>Smith v. Rials</u>, 595 So. 2d 490, 492 (Ala. Civ. App. 1991); <u>Phillips Brokerage v. Professional Personnel Consultants</u>, 517 So. 2d 1, 2 (Ala. Civ. App. 1987).  Alabama courts have stated that the applicability of the above principle may be determined by assessing whether the agreement at issue is "collateral" or "original."  <u>See</u> <u>Rials</u>, 595 So. 2d at  492.  "'Collateral' agreements are those in which the object of the promise is to become the guarantor of another's debt; these are within the statute and must be in writing to be enforceable.  'Original' agreements are those in which the *effect* of the promise is to pay the debt of another, but the *object* of the promise is to promote some purpose of the promisor."  <u>Fendley v. Dozier Hardware Co., Inc.</u>, 449 So. 2d 1236, 1238 (Ala. 1984)(citation omitted).

The Court finds the Alabama case of <u>Borden v. King Mill & Lumber Co.</u>, 107 So. 455 (Ala. 1926), instructive in making its determination in this case as to whether the Anixter agreement is subject to § 8-9-2(3).  The relevant facts in <u>Borden</u> are as follows: Twitty was running a sawmill and planer, manufacturing pine timber into lumber.  King Mill, who owned

12

the timber, had a written contract with Twitty whereby Twitty was to cut, haul, and manufacture King Mill's timber into lumber, and King Mill was to pay Twitty $10 per thousand feet. Twitty employed men to assist him in various aspects of the work he contracted to perform and agreed to pay them for their assistance. Twitty did not pay the men as he had agreed to do and, therefore, they quit working. King Mill told the men that it would pay them the amount Twitty owed them, if they would return to the mill and manufacture King Mill's timber into lumber. Under these facts, the Alabama Supreme Court held:

> The promise of the King Mill & Lumber Company to pay the debts due each plaintiff by Twitty only was based on a new and valuable consideration. They were to return to work, which they did, and their future work would benefit these defendants, as they would thereby have their timber manufactured into lumber. The promise by them to plaintiffs, and on which plaintiffs acted, was binding on these defendants,

107 So. at 456. The court concluded that King Mill's promise to pay the wages owed by Twitty was not within the statute of frauds. Id.

In this case, Trico's agreement to pay Anixter was not made as a "special promise to answer for the debt ... of another." Rather, Trico agreed to pay Anixter so that Anixter would complete its work on Hull 8066. This agreement was clearly an "original agreement" in which the object of the promise was to promote a purpose of Trico, the promisor, and the effect of the promise was to pay the debt owed by Bender, Inc. As such, § 8-9-2(3) is not applicable to the Anixter Letter Agreement.

Bender, Inc. also alleges that the Anixter Letter Agreement violates § 8-9-2(7) of the Alabama statute of frauds. As set forth above, that section provides that every agreement to lend money or to delay or forbear repayment thereof must be in writing and signed by the party to be charged. Although some of the letter agreements contain language concerning a loan made by

13

Trico to Bender, the Anixter agreement does not.  The Anixter agreement simply does not fall within the writing and signing requirement of § 8-9-2(7).  Accordingly, the court finds that the Anixter agreement does not violate the statute of frauds.

    D.  <u>Motion for Partial Summary Judgment</u>

    1.  <u>Findings of Fact</u>

On or about September 1, 2006, Trico and Bender, Inc. entered into two contracts for the construction and sale of two 210-Foot Diesel Electric Powered Platform Supply Vessels.  During the course of building the vessels, Bender, Inc. contracted with various subcontractors to assist in construction of the vessels.  Between September 10, 2008 and November 25, 2008, Bender, Trico, and seventeen subcontractors entered into separate letter agreements whereby Trico agreed to pay amounts that Bender owed the subcontractors for their work on the vessels directly to the subcontractors in exchange for the subcontactors' agreement to complete their work on the vessels.  <u>See</u> Declaration under 28 U.S.C. § 1746 of Ray Hoover, Exhibits 1A-1P (doc. 20-3).

Eleven of the letter agreements, although not exactly identical, contain essentially the same terms.  Decl. of Hoover, Exhibits 1A, 1E, 1F, 1G, 1I, 1J, 1K, 1L, 1M, 1N, and 1O.  These agreements provide, in relevant part, that all amounts paid to the subcontractors by Trico would be applied to the balance Trico owed to Bender, Inc. for the vessels.  <u>Id</u>.  In addition, these eleven agreements provide that any amounts paid by Trico in excess of the amount it owed Bender, Inc. would constitute a loan to Bender, Inc, and that Bender, Inc, would repay this loan in full on or before February 15, 2009.  <u>Id</u>.  Three of the letter agreements, the Center Line Letter Agreement, the Hose-McCann Letter Agreement, and the Anixter Letter Agreement, provide only that the amounts paid to the subcontractors pursuant to those agreements would be applied

to the balance owed by Trico to Bender, Inc; they do not contain any provision concerning excess amounts paid.   Decl. of Hoover, Exhibits 1B, 1H, and the Anixter Letter Agreement. One of the letter agreements, the American Bureau of Shipping ("ABS") Letter Agreement, states that the amount paid by Trico will constitute a loan from Trico to Bender, Inc., but it further states that the loan would be due on or before December 11, 2008, "provided that the Chouest closing occurs as planned."  Decl. of Hoover, Exhibit 1P.  Neither party has offered any evidence as to whether the Chouest closing occurred as planned.  One of the letter agreements, the Coastal Marine Equipment Letter Agreement, does not contain any language requiring the amounts paid by Trico to be applied to the balance Trico owed to Bender, Inc., nor does it contain any loan provision.  Decl. of Hoover, Exhibit 1C.  The remaining letter agreement, the Converteam Letter Agreement, contains an enforceable arbitration clause.  Decl. of Hoover, Exhibit 1D.

Trico made payments under these letter agreements.  Decl. of Hoover, p.2 and Exhibit 1Q.  Trico made a payment to Converteam, Inc. in the amount of $2,255,000.00.  Id.  Trico made a payment to the ABS in the amount of $164,529.00.  Id.  Trico made a payment to Coastal Marine Equipment in the amount of $110,076.00.  Id.  Trico made a total payment to Center Line, Inc., Hose-McCann Communications, and Anixter Bros., Inc. in the amount of $154,255.97.  Id.  Trico made a total payment to the remaining eleven subcontractors pursuant to the letter agreements with the loan language in the amount of $2,225,026.10.  Id.

There is no evidence that Bender, Inc. has made any payments to Trico pursuant to these letter agreements.   Because Bender, Inc. is now seeking full payment under the original construction contracts, it appears that Bender, Inc. has not applied any of the amounts paid by

Trico to the subcontractors to the balance owed on those contracts.  Bender Inc.'s Counterclaim

(doc. 9).  Pursuant to the vessel construction contracts, Trico owes Bender, Inc. $1,585,505.00

for Hull 8066 and $104,764 for Hull 8065.  Id.; Trico's Memorandum in Support of Motion for

Partial Summary Judgment, p.3 (doc. 20-2).

    2.  Standard of Review

Summary judgment should be granted only if "there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[7]

The party seeking summary judgment bears "the initial burden to show the district court, by

reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party

seeking summary judgment always bears the "initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  Id. (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing

on an essential element of her case with respect to which she has the burden of proof," the

moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether

the nonmoving party has met its burden, the court must stop short of weighing the evidence and

---

    [7]  Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be
granted:

      if the pleadings, the discovery and disclosure materials on file, and any affidavits show
      that there is no genuine issue as to any material fact and that the movant is entitled to
      judgment as a matter of law.

Fed. R. Civ. P. 56(c).

making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).  The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment.  Lofton v. Secretary of Dep't of Children & Family Serv., 358 F.3d 804, 809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

3. Analysis[8]

Under both Alabama and Texas law, "[t]o establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance and (4) damages."[9] Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1195 (Ala. 2003); see Taub, 75 S.W.3d at 615. With the exception of the Anixter agreement, the parties do not dispute that the letter agreements

---

[8] Because this Court has already found that all claims relating to the Converteam Letter Agreement must be submitted to arbitration, that agreement will not be included in this analysis.

[9] As noted above, a district court sitting in diversity applies the choice of law rules of the forum state to determine which state's law applies to the substantive claims in the action.  See Klaxon Co. v Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).  In the instant case, fifteen of the agreements state that the agreements should be governed by Texas law and one of the agreements states that the agreement should be governed by Alabama law.  Decl. of Hoover, Exhibits 1A-1P (doc. 20-3).  "Alabama recognizes the right of contracting parties to choose the law of another state that governs the contract so long as the consequences of such provisions are not likely to be contrary to Alabama law or public policy."  Goodwin v. George Fischer Foundry Systems, Inc., 769 F.2d 708, 712 (11th Cir. 1985).  Texas law regarding the elements of a breach of contract action is identical to Alabama law.  Taub v. Houston Pipeline Co., 75 S.W.3d 606, 615 (Tex. App. 2002)(holding that "[t]he elements of a breach of contract claim are: 1) existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages to the plaintiff resulting from the breach").

are valid contracts.  This Court has decided, as a matter of law, that the Anixter agreement is

valid as an oral agreement which terms are evidenced by the unexecuted agreement.  See

Discussion, supra, at 10-14.  Thus, the first element is met.

Trico has submitted evidence that it performed under the letter agreements by making

payments to the subcontractors.  See Decl. of Hoover.  The only opposition to Trico's motion for

partial summary judgment submitted by Bender, Inc. is its argument that Hoover's Declaration is

insufficient to show performance by Trico.  Bender, Inc. asserts that Trico should have submitted

better evidence of its payments to the subcontractors.  Bender, Inc. submitted no evidence

refuting Trico's showing that it made the payments described in the Hoover Declaration.  Rule

56(e)(1) of the Federal Rules of Civil Procedure states that affidavits submitted in support of a

motion for summary judgment "must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant is competent to testify on the matters stated."

The Court finds that Hoover's Declaration meets these requirements.  Thus, because Hoover's

Declaration states that Trico has performed under the letter agreements and Bender, Inc. has

offered no evidence disputing Hoover's statements, the second element of Trico's  breach of

contract claim is met.

Based upon the pleadings of the parties and the unopposed Hoover Declaration, the Court

finds that Bender, Inc. has failed to perform under fourteen of the letter agreements(Exhibits 1A,

1B, 1E, 1F, 1G, 1H, 1I, 1J, 1K, 1L, 1M, 1N,1O, and the Anixter agreement) by failing to apply

the payments made by Trico to the subcontractors to the balance owed by Trico to Bender, Inc.

Thus, the third and fourth elements of a breach of contract claim have also been met in this case

as to those agreements.  Accordingly, the Court finds that Trico is entitled to partial summary

judgment as to fourteen of the letter agreements, i.e., Exhibits 1A, 1B, 1E, 1F, 1G, 1H, 1I, 1J, 1K, 1L, 1M, 1N,1O, and the Anixter agreement.

All claims relating to the Converteam Letter Agreement have been dismissed; therefore, Trico is not entitled to summary judgment on those claims.  See Discussion, supra, at 6-10.

The Coastal Marine Equipment Letter Agreement does not contain any language requiring the amounts paid by Trico to Coastal Marine to be applied to the balance Trico owed to Bender, Inc,, nor does it contain any loan provision.  Decl. of Hoover, Exhibit 1C.  Therefore, Bender, Inc., having no duties under this agreement, has not breached the written agreement.

Trico also cannot prevail on summary judgment under the written contract for any amounts it paid to ABS.  The ABS Letter Agreement states that the amount paid to ABS by Trico will constitute a loan from Trico to Bender, Inc., but it states that the loan would be due on or before December 11, 2008, "provided that the Chouest closing occurs as planned."  Decl. of Hoover, Exhibit 1P.  Neither party has offered any evidence as to whether the Chouest closing occurred as planned.  Therefore, the Court cannot make a determination at this stage of the proceedings as to whether Bender, Inc. breached the ABS agreement.  Because Trico did not offer evidence as to this agreement, Trico is not entitled to summary judgment as to any claims relating to the ABS Letter Agreement.

The total outstanding amount Trico owes Bender, Inc. is $1,690,269.00.  As discussed above, the Center Line Letter Agreement, the Hose-McCann Letter Agreement, and the Anixter Letter Agreement provide only that the amounts paid to the subcontractors pursuant to those agreements would be applied to the balance owed by Trico to Bender, Inc; they do not contain any provision concerning excess amounts paid.  The total amount paid by Trico under these three

agreements was $154,255.97. Thus, Trico is entitled to have that amount subtracted from the amount it owes Bender, Inc., leaving a total due to Bender of $1,536,013.03. The amount paid by Trico pursuant to the remaining eleven letter agreements, which do contain the loan language, was $2,225,026.10. Pursuant to those agreements, after these amounts are applied to the balance due Bender, Trico made a loan to Bender, Inc. in the amount of $689,013.07. Bender, Inc. has not paid Trico any amounts under the loan which was due to be paid on or before February 15, 2009. Therefore, Trico is entitled to judgment in its favor on its breach of contract claim as to the Sunbelt, the Cummins, the Donovan, the Hiller, the ITT, the Landcoast, the Marine Interior, the New Industries, the Rock Cable, the Seacoast, the Severn, the Center Line, the Hose-McCann, and the Anixter Letter Agreements.

III.  Conclusion

As set forth above, Bender, Inc.'s motion to dismiss for improper venue (doc. 24) is **DENIED.**  For the reasons set forth above, Bender, Inc.'s motion to dismiss and compel arbitration of all claims relating to the Converteam Letter Agreement (doc. 25) is **GRANTED.** Accordingly, it is hereby **ORDERED, ADJUDGED, and DECREED** that all claims relating to the Converteam Letter Agreement are **SEVERED** from the remaining claims in this action, that these claims are **ORDERED** to arbitration pursuant to the agreement of the parties, and that these claims are **DISMISSED**.

For the reasons set forth above, Trico is entitled to summary judgment in its favor as to its claims for breach of contract of the Sunbelt, the Cummins, the Donovan, the Hiller, the ITT, the Landcoast, the Marine Interior, the New Industries, the Rock Cable, the Seacoast, the Severn, the Center Line, the Hose-McCann, and the Anixter Letter Agreements.  Accordingly, it is

hereby **ORDERED, ADJUDGED, and DECREED** that judgment be entered in favor of Trico and against Bender, Inc. as to the aforementioned claims in the amount of $689,013.07.

      **DONE** and **ORDERED** this 29th day of June, 2009.

                   **s / Kristi K. DuBose**
                   **KRISTI K. DuBOSE**
                   **UNITED STATES DISTRICT JUDGE**